UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-80534-CIV-MARRA

CHRISTOPHER CAPODANNO and JILL
CAPODANNO,

Plaintiffs,

vs.

PREMIER TRANSPORTATION &
WAREHOUSING, INC. and LIBERTY
MUTUAL INSURANCE COMPANY,

Defendants.
_____/

**<u>OPINION AND ORDER</u>**

This cause is before the Court upon Defendant Liberty Mutual Insurance Company's Motion for Partial Summary Judgment (DE 114).[1]  The Court has carefully considered the motion and is otherwise fully advised in the premises.

I.  <u>Background</u>

Plaintiff Christopher Capodanno ("Plaintiff" "Capodanno") brings this action for uninsured/underinsured motorist coverage against Defendant Liberty Mutual Insurance Company ("Defendant" "Liberty Mutual").[2]  Plaintiff was insured by Defendant for motorist coverage. (Third Am. Compl. ¶ 11.)  On or about July 9, 2008, Plaintiff was involved in a motor vehicle accident with a truck driven by Rowdy Howard, an employee of Premier Transportation &

---

[1] The motion was filed by Defendant Premier Transportation & Warehousing, Inc. Defendant Liberty Mutual Insurance Company, as the underinsured motorist carrier, filed a Notice of Joinder in the instant motion. (DE 117.)  However, on May 24, 2010, Defendant Premier Transportation & Warehousing, Inc. was dismissed from the case. (DE 194.)

[2] Plaintiff Jill Capodanno is no longer in the case. (DE 190, 192.)

Warehousing, Inc. ("Premier") (Third Am. Compl. ¶ 2.)  Plaintiff alleges that Mr. Howard was negligent in his operation of the vehicle, causing it to collide with Plaintiff's vehicle.  (Third Am. Compl. ¶ 3.)  Plaintiff also alleges that Premier was negligent in the hiring, supervision and training of Mr. Howard. (Third Am. Compl. ¶ 5.)  Moreover, the Third Amended Complaint states that Premier was negligent in failing to properly equip and maintain the vehicle, including the failure to install a front-mounted convex mirror. (Third Am. Compl. ¶ 4; see also DE 56.)

According to the Declaration of Jim Kuiphof, the Safety Director of Premier, the truck driven by Mr. Howard was purchased new in 2004 and came equipped from the manufacturer with all mirrors and was understood to be in compliance with all state and federal regulations pertaining to rear view mirrors.  The mirrors were not modified in any way after the purchase of the truck. (Kuiphof Decl. ¶ 2, attached to DE 114-5; see also Navistar, Inc's Notice of Serving Answers to Interrog. ¶ 2, attached to DE 114-6.)

Defendant moves for summary judgment on two bases.  First, Defendant claims that federal law preempts a Florida common law negligence claim based on Premier's decision not to install a front-mounted convex mirror.  Second, Defendant contends that there is no factual or legal basis supporting the negligent hiring, training or supervising claim.  In response, Plaintiff asserts that federal law does not preempt its common law negligence claim regarding the mirrors.  With respect to the negligent hiring, training and supervising claim, Plaintiff states that he requires additional discovery in order to respond to this portion of the motion.  Specifically, he wants to depose Mr. Kuiphof and present his testimony to Plaintiff's experts.  In reply, Defendant states that Plaintiff did not file an affidavit pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, and therefore this issue is properly before the Court.

II.  Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of  Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

III.  Discussion

A.  State common law claims and preemption

To address Defendant's claim that Plaintiff's common law negligence claims are preempted, the Court begins by examining Geier v. American Honda Motor Co., 529 U.S. 861 (2000). In Geier, the Supreme Court addressed the issue of preemption with respect to state law tort claims. There, the plaintiff was injured in a car accident and brought a common-law tort suit against the manufacturer of the car. Id. at 865. Although the car was equipped with a seat belt that the plaintiff was using at the time of the accident, the car was not equipped with air bags or other passive restraint devices. Id. The issue before the Court was whether the Department of Transportation Federal Motor Vehicle Safety Standard (FMVSS) 208, a regulation promulgated under the National Traffic and Motor Vehicle Safety Act ("Safety Act"), which required automobile manufacturers to equip some but not all of their 1987 vehicles with passive restraints, preempted the plaintiff's state law claim. Id. at 866-67. The Court found that the plaintiff's claims were not expressly preempted by virtue of the Safety Act's saving clause, which the Court read narrowly to preempt only state statutes and regulations and not common law actions. Id. at

867-68. Specifically, the Court stated "a reading of the express preemption provision that excludes common-law tort actions gives actual meaning to the saving clause's literal language, while leaving room for state tort law to operate - for example, where federal law creates only a floor, i.e., a minimum safety standard. . . The language of the preemption provision permits a narrow reading that excludes common-law actions." Id. at 868.

Next, the Court proceeded to consider whether there was implied conflict preemption. In finding that there was, the Court relied upon an analysis of the Safety Act's savings provision and concluded that it did not forbid "the ordinary working of conflict preemption principles." Id. at 869. The Court then analyzed the statutory structure of the Safety Act and the regulation and found that the Department of Transportation's objective was to give manufacturers a wide range of choices among different passive restraint systems and thereby rejected an "all airbag standard." Id. at 878-79. Thus, Grier found that a state common-law requirement of air bags conflicted with the Department of Transportation's policy as reflected in the Safety Act and regulations and the plaintiff's claim was therefore preempted. Id. at 886.

Harris v. Great Dane Trailers, Inc., 234 F.3d 398 (8th Cir. 2000), decided after Geier, addressed a plaintiff's claim that the truck her husband's vehicle had struck at night was defectively manufactured because the truck's rear end did not have reflective tape. Id. at 399. The Harris court examined FMVSS 108, a regulation promulgated under the Safety Act for trailer lamp and reflective devices. Id. at 401. Harris stated that FMVSS 108 provided that "each vehicle shall be equipped with *at least* the number of lamps, reflective devices and associated equipment specified," but "did not *require* the use of reflective tape to make the trailers more conspicuous." Id. quoting 49 C.F.R. § 571.108 s5.1.1 (emphasis in original). As

5

such, Harris found that FMVSS 108 merely established "a minimum federal safety standard" and thus posed "no actual conflict between FMVSS 108 and [the plaintiff's] common law claim because the federal standard neither required nor prohibited the use of reflective tape." Id. Accordingly, Harris held there was no implied preemption. Harris also rejected an argument that the fact that the National Highway Traffic Safety Administration was conducting a study into the use of reflective tape meant that the claim was preempted. Unlike in Geier, the ongoing study was not a "federally granted option not to install the tape" and instead "left the industry where it was before - free to make voluntary decisions whether to add reflective devices." Id. at 402-03.

The parties agree that the pertinent regulation at issue is FMVSS Number 111 (49 C.F.R. § 571.111) which specifies requirements for the performance and location of rearview mirrors. (DE 114 at 8; DE 143 at 7.)  The purpose of this provision is "to reduce the number of deaths and injuries that occur when the driver of a motor vehicle does not have a clear and reasonably unobstructed view to the rear." 49 C.F.R. 571.111 s2.

The National Highway Traffic Safety Administration considered the use of convex mirrors on commercial trucks in response to a petition for rulemaking. The petition sought an amendment to the FMVSS to require that all commercial trucks traveling on interstate highways have convex mirrors affixed to their front right and left fenders to provide drivers of those vehicles an increased field-of-view during lane change maneuvers. The agency withdrew the rulemaking based upon the "absence of available safety data," "the high rate of voluntary installation of convex mirrors on commercial trucks" and agency's incomplete research program. The agency noted that it was currently in the process of conducting research on this issue. 70 FR 57549-01.

6

The Court finds that the instant case is analogous to the facts of Harris, and not Geier. Unlike the rejection of the "all airbag standard" in Geier, the National Highway Traffic Safety Administration did not reject the use of front-mounted convex mirrors.  Instead, the Administration withheld agency action pending further study.  In Harris, the court rejected the argument that state common law remedies were preempted when a federal agency was studying whether to adopt or strengthen a minimum standard.  Harris, 234 F.3d at 402-03.  Furthermore, unlike Geier, in this case there is no federal safety standard designed to give manufacturers specific choices among designated design options.   For these reasons, the Court finds that the common law negligence claim is not  preempted.  See also Sprietsma v. Mercury Marine, 537 U.S. 51 (2002) (common law tort claims for failure of boat to be equipped with a propeller guard was not preempted when decision by Coast Guard not to require propeller guards was consistent with "an intent to preserve state regulatory authority pending the adoption of specific federal standards"); O'Hara v. General Motors Corp., 508 F.3d 753 (5th Cir. 2007) (common law and strict liability claims were not preempted against automobile manufacturer who used tempered glass instead of advanced glazing in side windows when the FMVSS allowed the option of using tempered glass anywhere other than in the windshield).

Lastly, Defendant has submitted for consideration a proposed rule by the Department of Transportation which requires straight trucks to be equipped with a rear object detection system. Defendant has also submitted a notice of withdrawal of that rule and an interpretation letter by the National Highway Traffic Safety Administration stating that a proposed New York state law that would require certain vehicles to be manufactured with a convex mirror on the passenger side was preempted by federal law.  See 73 FR 42309-01; 70 FR 53753-01; National Highway

Traffic Safety Administration,http://isearch.nhtsa.gov/files/07-004354--4%20Oct%2007--sa.htm. These submissions do not change the outcome here. The proposed rule and the notice of the withdrawal demonstrate a lack of a comprehensive regulatory scheme, thereby providing no basis to find preemption of state common law tort remedies. Furthermore, the interpretation letter does not address a common law claim. Finally, the state statute at issue proposed to regulate mirrors in a manner different from the federal regulation, thereby providing an entirely different ground for preemption than presented here.

For the foregoing reasons, the Court concludes that Defendant's motion for summary judgment on the basis that Plaintiff's state law common law claims are preempted is denied.

B. Negligent hiring, training and supervising claim

In moving for summary judgment on the negligent hiring, training and supervising claim, Defendant relies upon the declaration of Mr. Kuiphof, the safety director of Premier. This declaration sets forth the driving record of Mr. Howard. In responding to the motion for summary judgment, Plaintiff states that, in order to respond to the motion, he must depose Mr. Kuiphof and present his testimony to Plaintiff's experts. Plaintiff relies upon Rule 56(f) of the Federal Rules of Civil Procedure in making this application.

In ruling on summary judgment motions, the Eleventh Circuit has held that "summary judgment may only be decided upon an adequate record." WSB-TV v. Lee, 842 F.2d 1266, 1269 (11th Cir.1988). "If documents or other discovery sought would be relevant to the issues presented by the motion for summary judgment, the opposing party should be allowed the opportunity to utilize the discovery process to gain access to the requested materials. Snook v. Trust Co. of Georgia Bank of Savannah, N.A., 859 F.2d 865, 870 (11th Cir. 1988). Here, as noted

supra, Plaintiff has identified some items it requires to oppose the motion for summary judgment. Furthermore, while Defendant relies heavily on the declaration of Mr. Kuiphof, Plaintiff has not been afforded the opportunity to conduct his deposition prior to filing his response to the motion. It would be improper to rule on the motion without allowing Plaintiff this opportunity. See Jones v. City of Columbus, 120 F.3d 248, 253 (11th Cir. 1997) (finding district court abused its discretion in deciding summary judgment when the plaintiffs never had opportunity to examine all the documents they requested or to depose the city officials whose affidavits were offered in support of the motion for summary judgment); Luberisse v. V & V Sons, Inc., No. 07-81064-CIV, 2008 WL 4820071, at *1 (S.D. Fla. 2008) (finding the plaintiff's request for discovery reasonable when the plaintiff has been unable to take depositions of individuals relied upon in the moving party's motion for summary judgment). Assuming that Plaintiff has already taken the necessary discovery, Plaintiff shall file an amended response to the motion for summary judgment within 10 days of the date of entry of this Order. If Plaintiff has not taken the necessary discovery, Plaintiff shall file his response within 10 days after conducting the discovery, but no later than August 16, 2010. Defendant may file an amended reply memorandum.[3]

Accordingly, Defendant's motion for summary judgment on the negligent hiring, training

---

[3] The Court rejects Defendant's argument that Plaintiff was required to file an affidavit pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 570 (11th Cir.1990) (quoting Snook v. Trust Co., 859 F.2d 865, 870 (11th Cir.1988)) ("the opposing party does not need to file an affidavit pursuant to Rule 56(f) in order to invoke the protection of that rule because 'the written representation by [the opposing party's] lawyer, an officer of the court, is in the spirit of Rule 56(f) under the circumstances.' ")

and supervising claim is denied without prejudice.

### IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant Liberty Mutual Insurance Company's Motion for Partial Summary Judgment (DE 114) is **DENIED IN PART AND DENIED WITHOUT PREJUDICE IN PART.**  Plaintiff shall file his amended response consistent with the directives in this Order.  Defendant may file an amended reply memorandum consistent with the Federal and Local Rules of Civil Procedure.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 15th day of July, 2010.

_____
KENNETH A. MARRA
United States District Judge